UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
WEN JIAN CHEN, LAIGEN QIN, GUI ZHEN MA,

                           **MEMORANDUM OF**
                           **DECISION AND ORDER**

             Plaintiffs,         14-cv-03435 (LDH) (RLM)

   -against-

DG&S NY, INC. d/b/a SHANGHAI TAN;
JOHN DOE 01-05 CORPORATIONS
d/b/a SHANGHAI TAN; NEW SHANGHAI TAN
RESTAURANT, INC. d/b/a SHANGHAI TAN;
SHANGHAI TAN RESTAURANT, INC. d/b/a
SHANGHAI TAN; SHANGHAI TIDE
RESTAURANT, INC. d/b/a SHANGHAI TAN;
DAVID GAO, YI XIANG LIU, FU LING SHI a/k/a
"AH LING" SHI, and WING NIN CHAN,

                     Defendants.
---------------------------------------------------------------------x
LASHANN DEARCY HALL, United States District Judge:

      Plaintiffs Wen Jian Chen, Laigen Qin, and Gui Zhen Ma, assert claims pursuant to various provisions of the Fair Labor Standards Act ("FLSA" or the "Act") and New York Labor Law ("NYLL"). Plaintiffs name two groups of Defendants: (1) Shanghai Tan, Inc. ("Shanghai Tan"), its various corporate entities, and the former owners and managers of the same; and (2) DG&S NY, Inc. ("DG") along with David Gao, DG's sole shareholder (collectively, the "DG Defendants"). The DG Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

      Plaintiffs are former employees of Shanghai Tan, a now-defunct restaurant that was located at 135-20 40th Road in Flushing, New York. (Pls.' 56.1 Statement ¶ 1, ECF No. 92.) Shanghai Tan specialized in Shanghainese cuisine and hot pot dishes. (*Id*. ¶ 46.) The parties

1

dispute who owned Shanghai Tan, but agree that it was managed, in part, by Zhe Ming Liu and, until she was arrested in December 2013, Fu Ling Shi (Defendant Gao's mother). (*Id*. at ¶¶ 2, 4, 6; Ma Decl. ¶ 12, ECF No. 85-2; Gao Decl. ¶ 12, ECF No. 82.) Plaintiffs maintain that, beginning in December 2013, Gao took over the management of the restaurant. (Pls.' 56.1 Statement ¶¶ 10-17; Ma Decl. ¶¶ 7-10.) Specifically, Plaintiffs claim that Gao came to the restaurant on a daily basis, had authority to close the restaurant at night, acted as Plaintiff Ma's supervisor, and issued wage payments to Ma. (Pls.' 56.1 Statement ¶¶ 11-12; Ma Decl. ¶¶ 7-10.) The DG Defendants dispute that Gao—who was in high school in December 2013—took control over Shanghai Tan after his mother's arrest. (Pls.' 56.1 Statement ¶¶ 11-26; Gao Decl. ¶¶ 6, 12-29.) Instead, the DG Defendants maintain that it was Liu who took over the restaurant in December 2013. (Pls.' 56.1 Statement ¶ 10; Gao Decl. ¶ 12.) The DG Defendants further maintain that Gao's work at the restaurant was limited to paying certain of its utilities on behalf of Liu, and receiving occasional payment for assistance with janitorial work. (Pls.' 56.1 Statement ¶¶ 30-31; Gao Decl. ¶¶ 32-33.)

On March 6, 2014, Gao formed DG, a corporate entity that does business as "New Shanghai Tan." (Defs.' Mem. Supp. Mot. Summ. J. Ex. C, ECF No. 81-3; *Id.* at Ex. E, ECF No. 81-5.) According to the DG Defendants, New Shanghai Tan began operations in May 2014. (Gao Decl. ¶ 44.) At about that time, New Shanghai Tan assumed Shanghai Tan's lease. (Pls.' 56.1 Statement ¶¶ 39-40; Gao Decl. ¶¶ 41-42.) The new lease was backdated to October 2013, the date when Shanghai Tan's lease was set to automatically renew. (Pls.' 56.1 Statement ¶¶ 39-40; Gao Decl. ¶¶ 41-42.) New Shanghai Tan now operates from Shanghai Tan's former location. (Pls.' 56.1 Statement ¶¶ 39-40; Gao Decl. ¶¶ 41-44.) The DG Defendants also acknowledged at oral argument that New Shanghai Tan uses the same business phone number

and similar equipment as its predecessor. (Aug. 11, 2016 Hr'g Tr. 11:9-10, 23:2-8.) Like Shanghai Tan, New Shanghai Tan specializes in Shanghainese cuisine and hot pot dishes. (Pls.' 56.1 Statement ¶ 46.) Moreover, New Shanghai Tan employs a number of former Shanghai Tan employees, including Liu, one of Shanghai Tan's former managers. (*Id.* ¶¶ 43-44.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330-331 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325.

Once the movant meets its initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in its favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) (citing *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)). That is, the non-movant cannot survive summary judgment merely by

relying on the same conclusory allegations set forth in its complaint. *See Murphy v. Lajaunie*, No. 13-cv-6503, 2016 WL 1192689, at *2 (S.D.N.Y. Mar. 22, 2016) (citing *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)).

## DISCUSSION

I. Defendant Gao's Employer Status[1]

The FLSA, which establishes minimum wage, overtime pay, recordkeeping, and other employment standards, creates a private right of action against employers who violate its terms. *Ahmed v. T.J. Maxx Corp.*, No. 10-cv-3609, 2014 WL 5280423, at *2 (E.D.N.Y. Sept. 24, 2014) (citing 29 U.S.C. § 216(b)), *aff'd*, 103 F. Supp. 3d 343 (E.D.N.Y. 2015). The statute defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Given the remedial nature of the FLSA, courts must construe its definition of an employer liberally. *See Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (noting that the FLSA "is a remedial [statute], written in the broadest possible terms" so that it "would have the widest possible impact in the national economy," and declining to impose limitations on the definition of employer that would "run[] counter to the breadth of the statute"). NYLL establishes similar standards and liability. *Vasquez v. Ranieri Cheese Corp.*, No. 07-cv-464, 2010 WL 1223606, at *8 (E.D.N.Y. Mar. 26, 2010) (noting that the NYLL "creates a similar regulatory regime" as the FLSA) (citing 12 N.Y.C.R.R. §§ 142-2.1, -3.1; *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 548 (S.D.N.Y. 2009)). Like the FLSA, the definition of employer under NYLL is particularly broad. *See* N.Y. Lab. Law § 190(3) ("'Employer' includes any person . . . employing any individual"); *see also Hernandez v. La*

---

[1] At oral argument, Plaintiffs clarified that they do not seek successor liability against Defendant Gao and, consistent with this position, have not argued that this Court should pierce the corporate veil in order to extend DG's potential liability to Gao. (Aug. 11, 2016 Hr'g Tr. 12:11-18.)

*Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534-35 (E.D.N.Y. 2007) ("[L]ike the definition for 'employer' under the FLSA, the definition under New York minimum wage law is expansive.").

In determining whether an individual or entity falls under the "employer" umbrella, the Court's inquiry focuses on the "economic reality" of the relationship between the purported employer and the workers in question. *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-142 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). This economic reality test, which applies equally to the FLSA and NYLL, asks how much authority the "employer" exercised over the "employees." *Id.* at 142; *see also Franco v. Jubilee First Ave. Corp.*, No. 14-cv-07729, 2016 WL 4487788, at *5 (S.D.N.Y. Aug. 25, 2016) (noting that courts in the Second Circuit employ the economic reality test to determine employer status under both the FLSA and NYLL) (collecting cases); *Hernandez*, 538 F. Supp. 2d at 534-35 ("[T]he question of whether an individual is an 'employer' under New York law involves the same legal considerations as those under federal law."). That is, whether an alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the [employees' pay] rate and method of payment, and (4) maintained employment records." *Barfield*, 537 F.3d at 142. No single factor of the test is dispositive, and the Court's determination is to be based at all times on the totality of the circumstances. *Id.* at 141-42 ("[T]his court has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."); *see also Herman v. RSR Sec. Servs*., 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive.").

Here, Defendant Gao argues that the Court should dismiss the case against him because Plaintiffs proffer no evidence to support their contention that he was their employer. (Defs.' Mem. Supp. Mot. Summ. J. 1, ECF No. 81.) The burden to establish Gao's liability as an employer under the FLSA and NYLL indeed rests with Plaintiffs. *See Estate of Hamilton v. City of New York*, 627 F.3d 50, 57 (2d Cir. 2010) ("[A] plaintiff making a Labor Law claim surely has the burden to demonstrate that the defendant is an "employer."); *Murphy*, 2016 WL 1192689, at *7 (granting summary judgment in favor of defendant and noting "it is Plaintiffs' burden to establish [defendant's] liability as an employer" under the NYLL). As such, the DG Defendants need not support their motion for summary judgment with affirmative evidence disproving Plaintiffs' claims. *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 713 (2d Cir. 1991) (citing *Celotex*, 477 U.S. at 323) (summary judgment in favor of defendant was proper where defendant did not submit evidence negating plaintiff's claim, but demonstrated that plaintiff did not submit sufficient evidence to create a triable issue of fact regarding its claim). Instead, by merely noting the absence of evidence that Gao acted as Plaintiffs' employer, Gao triggered Plaintiffs' burden to demonstrate a genuine issue of material fact on this point. *See Murphy*, 2016 WL 1192689, at *7 (burden to show "some evidence which would create a genuine issue of material fact" shifted to plaintiff after defendant noted the absence of evidence that he was an employer). Plaintiffs have not met their burden.

In opposition to the DG Defendants' motion, Plaintiffs submitted only a two-page affidavit by Plaintiff Ma. Virtually all of the facts asserted in Ma's affidavit are hotly disputed. In sum, Plaintiffs maintain that Gao was their employer because he was viewed by at least Plaintiff Ma as her "supervisor and boss," had authority to close the restaurant at night, came to the restaurant on a daily basis, and distributed salaries. (Ma. Aff. ¶¶ 7-10.) None of these factual

assertions is sufficiently supported by evidence in the record. That is, Plaintiff Ma provides no *objective* evidence to support her assertion that Gao was her boss. Similarly, Plaintiffs offer no documentary or testamentary evidence that Gao had the authority to close the restaurant. Ma's subjective beliefs, no matter how genuinely held, are simply of no consequence in assessing Gao's status as an employer under the economic reality test. *See Garcia v. JonJon Deli Grocery Corp.*, No. 13-cv-8835, 2015 WL 4940107, at *3 (S.D.N.Y. Aug. 11, 2015) ("[T]he economic reality test turns on objective economic realities, not subjective beliefs as to who constitutes an employer."); *see also Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002) (testimony that employers considered factory owner's father their "boss" was not sufficient to support a finding that he was an employer under the economic realities test), *aff'd as modified*, 66 F. App'x 261 (2d Cir. 2003). Next, even if plaintiff's assertions that Gao regularly came to the restaurant and distributed salaries were not disputed, as they are, those facts, without more, are insufficient to defeat summary judgment. *See Wu v. Chang's Garden of Storrs, LLC*, No. 08-cv-00746, 2010 WL 918079, at *4-6 (D. Conn. Mar. 11, 2010) (granting defendant's motion for summary judgment where defendant's limited authority to sign paychecks to employees and distribute cash payments was the only factor weighing in favor of a finding of employer status); *see also Chao*, 196 F. Supp. 2d at 291 (factory owner's father was not an employer where he was regularly present at the factory in question, attended certain employee meetings, and occasionally gave employees orders, but was not a shareholder in the company, never received paychecks from the company, never fired or hired employees, and played no integral role in setting employee work schedules).

Because Plaintiffs have not offered any evidence upon which a reasonable jury could rely to conclude that Gao acted as their employer, Defendant Gao is entitled to summary judgment as

a matter of law.

II.     Defendant DG's Successor Liability

Generally, a successor is not responsible for the liabilities of its predecessor. *Said v. SBS Elecs., Inc.*, No. 08-cv-3067, 2010 WL 1287080, at *3 (E.D.N.Y. Mar. 31, 2010) ("Typically, a corporation that acquires the assets of another corporation does not inherit the seller's liabilities."). Under certain circumstances, however, a court may find that a successor has either expressly or impliedly assumed the predecessor's liabilities and can therefore be held accountable for them. In the FLSA and NYLL context, courts have employed two tests to determine if liability should be imposed on a successor—the traditional test and the substantial continuity test. *See Vasquez*, 2010 WL 1223606, at *10, nn.13-14. The traditional test establishes four exceptions to the rule against successor liability, providing that the same will attach where: (1) a successor expressly or impliedly assumed the predecessor's liabilities; (2) there was a consolidation or "de facto merger" of predecessor and successor; (3) the successor corporation was a mere continuation of its predecessor; or (4) the transaction between successor and predecessor was entered into fraudulently to escape obligations. *See, e.g.*, *New York v. Nat'l Serv. Indus.*, 460 F.3d 201, 209 (2d Cir. 2006) (quoting *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45, (1983)); *Alvarez v. 40 Mulberry Rest., Inc.*, No. 11-cv-9107, 2012 WL 4639154, at *4 (S.D.N.Y. Oct. 3, 2012). The "mere continuation" and "de facto merger" exceptions, which Defendants rely upon here, may be considered a single exception. *Alvarez*, 2012 WL 4639154, at *4 (quoting *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003)).[2]

---

[2] In assessing whether there was a de facto merger or mere continuation, courts look to: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general

Alternatively, the substantial continuity test "focus[es] on whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'" *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14-cv-4335, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015) (quoting *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987)). It does so by looking to nine factors enunciated in *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974): (1) whether the successor company had notice of the subject liability or pending lawsuit prior to acquiring its predecessor's business; (2) the ability of the predecessor to provide relief on the same; (3) whether there has been a substantial continuity of business operations; (4) whether the successor company uses the same location; (5) whether it uses the same or substantially the same work force; (6) whether it uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether the successor company uses the same machinery, equipment, and methods of production; and (9) whether it produces the same product. *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012); *Alvarez*, 2012 WL 4639154, at *5. No single factor is controlling and, as such, the test should be considered as a whole. *Battino*, 861 F. Supp. 2d at 404 (quoting *EEOC v. Barney Skanska Const. Co.*, 99-cv-2001, 2000 WL 1617008, at *2 (S.D.N.Y. Oct. 27, 2000)).

The Second Circuit has yet to decide which inquiry should govern the application of successor liability in the FLSA context. *Alvarez*, 2012 WL 4639154, at *5. However, a number of district courts in this Circuit have found that the outcome would be the same no matter which

---

business operation." *Alvarez*, 2012 WL 4639154, at *4 (citing *Nat'l Serv. Indus.*, 460 F.3d at 209). While the Second Circuit has not resolved whether all of these factors are necessary to establish a de facto merger, courts have held that continuity of ownership is a necessary element to prevailing on such a claim. *Said*, 2010 WL 1287080, at *3.

9

test is applied. *See, e.g.*, *Alvarez*, 2012 WL 4639154, at *5; *Vasquez*, 2010 WL 1223606, at *10 n.14 (noting the use of both the traditional and substantial continuity test and concluding that, while "the case for successor liability may be more or less compelling" depending on the test employed, the result would remain the same). This was the case in *Alvarez*.

In *Alvarez*, like here, the facts were "murky," and there was no evidence that the successor restaurant, 40 Mulberry, had expressly assumed the liabilities of its predecessor, Asia Roma, or that the owner of 40 Mulberry had held any ownership stake in Asia Roma. *Alvarez*, 2012 WL 4639154, at *1, 6. However, the restaurants "shared a host of characteristics," including location, equipment, menu, trade name, website, and Facebook page. *Id.* at *6. Moreover, the record showed that 40 Mulberry's owner spent time at Asia Roma and that a prior Asia Roma owner likewise spent time at 40 Mulberry in an apparent supervisory capacity. *Id.* Based on these facts, the *Alvarez* court ruled there was a genuine issue of fact as to whether 40 Mulberry was a mere continuation of Asia Roma under the traditional test. *Id.*

Similarly, the *Alvarez* court found that there was sufficient evidence to raise a triable issue as to 40 Mulberry's liability under the substantial continuity test. *Alvarez*, 2012 WL 4639154, at *6. In particular, the Court noted that 40 Mulberry used the same location as Asia Roma, employed many of the same personnel, and potentially employed one of Asia Roma's owners and former operators as a floor manager. *Id.* This, combined with evidence that 40 Mulberry used the same kitchen equipment, offered the same menu with food prepared by the same cook, and used a Facebook page holding itself out as Asia Roma, created a triable issue of fact. *Id.* The same outcome is warranted in this case.

Here, as in *Alvarez*, there is no evidence of express or implicit assumption of successor liability and no evidence that New Shanghai Tan's sole shareholder, Gao, held an ownership

interest in Shanghai Tan.  However, New Shanghai Tan occupies Shanghai Tan's prior location, makes use of similar equipment, employs some of Shanghai Tan's prior personnel, serves the same kind of food previously offered at Shanghai Tan, and is managed by Liu, a prior Shanghai Tan manager.  These facts, which are undisputed, are sufficient to create a triable issue of fact as to successor liability.

## CONCLUSION

For the foregoing reasons, the DG Defendants' motion for summary judgment is hereby granted in part and denied in part.  The DG Defendants' motion is granted as to Gao, and Plaintiffs' claims against Gao are hereby dismissed, with prejudice.  The DG Defendants' motion is denied as to DG.

SO ORDERED:

 /s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated:  Brooklyn, New York
      September 29, 2016